THE PEOPLE, *ex rel.* REYNOLDS, *vs.* FLAGG, comptroller of the city of New-York.

THE SAME. *ex rel.* RUSS & REID, *vs.* THE SAME.

The comptroller of the city of New-York, as an officer of the city government, under the charter, is a subordinate administrative officer. As comptroller, he has no right to question the expediency, policy, judiciousness or discreon of the legal acts of the city government; or to disregard their liabilities, promises and obligations.

Thus, where the corporation entered into contracts with individuals for the performance of work and labor, in cleaning and paving streets, which contracts had been duly performed and the performance accepted by the proper department, and the debts were acknowledged and ordered to be paid, by the proper branch of the municipal government, and the comptroller directed to draw his warrants therefor; *Held,* that it was the duty of the comptroller to draw his warrants upon the chamberlain of the city, for the respective sums so ordered to be paid. And that upon his refusal, a mandamus would lie.

*Held also*, that it was no objection to the granting of a mandamus, that the defendant alleged in his return, in general terms, that the contractors had not performed the contract in manner and form as alleged; although the defendant might have availed himself of the defense that the parties had not performed their contracts, had he set it up in a proper manner.

IN each of these cases a motion was made for a mandamus against A. C. Flagg, comptroller of the city of New-York,

commanding him to draw his warrant upon the chamberlain of the city, in the one case in favor of the relator Reynolds, for $11,051,50; and in the other, in favor of the relators Russ & Reid, for $5850, and that he should deliver such warrants to the respective parties for whom they were intended, to enable them to obtain the signatures of the mayor and clerk of the common council, to authorize the relators to receive their money from the chamberlain of the city.

*By the Court,* MORRIS, J. No money can be drawn from the city treasury, except upon a warrant drawn and signed by the comptroller and countersigned by the mayor and clerk of the common council. Hence the necessity to obtain the warrant of the comptroller. In the case of Reynolds, the corporation made a contract with him on the 24th day of April, 1852, by which he agreed to remove from the city " the blood, offal and other refuse from the butchers' slaughter houses, dead horses, and other animals, and all bones and other nuisances of a similar kind," for a sum stipulated in the contract. Reynolds to furnish carts, boxes, vessels, scows, &c. to perform the work with, and when the state of the weather required, he was to remove such nuisances each and every day from the city ; and was also to furnish a specified quantity of lime for the purposes of purification. This contract, in accordance with the resolution of the common council, was executed on the part of the corporation by the city inspector. It will be observed that the services to be performed by Mr. Reynolds, under this contract, were essential to the preservation of the health and comfort of the residents of the city. The corporation, by resolution, directed the city inspector, their chief executive officer in the department of health, to see that Mr. Reynolds faithfully complied with the provisions of his contract. For work performed by Mr. Reynolds, he has been paid by a previous comptroller and by the present comptroller up to the 1st of April, 1853. On the 26th of July, 1853, the corporation, by resolution, legally adopted, directed the comptroller to draw his warrant in favor of Mr. Reynolds for $11,051,50, the amount due for work performed under the con-

The People *v.* Flagg.

tract up to the 1st of June, 1853. The defendant refused to draw the warrant; and assigns, substantially, the following reasons for such refusal. That the corporation have to pay to Mr. Reynolds, for his work, more than they ought to have agreed to pay. That the agreement was not made by the corporation in strict conformity with a general ordinance previously adopted by them, for their own government. That the comptroller, and not the city inspector or the mayor and common council, should be satisfied that Reynolds had performed his contract before he, the comptroller, can be required to draw his warrant.

The other case is as follows : Russ & Reid, under and by virtue of a resolution of the corporation, entered into a contract with the commissioner of repairs and supplies, on the part of the corporation, to repair certain streets by substituting the so called Russ pavement. An injunction was obtained by a citizen against the corporation and the contractors, Russ & Reid, forbidding the performance of the work. That injunction was subsequently dissolved, and Messrs. Russ & Reid, at the instance of the corporate authorities, went on with and performed the work to the amount specified in the complaint. The corporation accepted the work, and are in the actual possession and enjoyment of it. They passed a resolution directing the comptroller to draw his warrant for the amount due, $5850. That officer refused to comply, and now assigns substantially the same reasons, for his refusal, as are already stated in the case of Reynolds.

In deciding this motion, I will first notice the principles involved as affecting the relative official character and powers of the corporation and the comptroller, and will afterwards refer to the technical questions raised on the argument. The work done in both these cases is of that kind which the corporation, as a municipal government, is bound to perform. In the one case it relates to the health of the city ; in the other, to the convenience and comfort of the citizens. Were either to be neglected by the corporation, and serious injury resulted from such neglect, they would be answerable in civil actions, for such injury,

and might be indicted for any nuisances created by their negligence. In both these cases, were the corporation sued by the relators they could recover judgment for their respective claims. Yet if the comptroller can be justified in refusing to draw his warrant now, he could also be justified then in refusing to draw his warrant for the amount of such judgments. The question in both cases, therefore, is, what are the official powers of the comptroller of the city of New-York ? Are his powers paramount to those of the corporation, the mayor, the aldermen and councilmen, the common council, and all the heads of departments ? Has he an absolute negative upon the official acts of all and each, or is he merely a subordinate, compelled to obey the legal requirements of his superiors ?

The comptroller of the city of New-York, as an officer of the city government under the charter, is a subordinate administrative officer : although other statutes may have conferred upon him executive and judicial duties, yet those statutes and the powers conferred by them do not affect his character as comptroller, or give him in that capacity greater or other powers than those properly belonging to his position as such subordinate administrative officer. As comptroller of the city he has no right or lawful power to question the expediency, policy, judiciousness or discretion of the legal acts of the city government; or to disregard their liabilities, promises and obligations. He has no more right, authority or power to set up his individual opinion and judgment against the legal determinations of the corporation, indicated by the acts of the common council, than a sheriff or constable has to disregard an order of court, or an execution issued upon a judgment, because the court's decision does not square with the sheriff's or constable's notion of what he would have decided had he been the court. Our lawmakers have not been guilty of such absurdity as to confer upon these subordinate officers the power of reviewing the decisions of their superiors, or of exercising an absolute negative upon the determinations of those official powers whose orders they are created to obey and execute. The power claimed by the comptroller would practically make the mayor, aldermen and councilmen were puppets in his hands,

compelling them, before they adopted any measure requiring the expenditure of money, to obtain his approval of the intended measure or to submit to his dictation upon the subject; else the laborer employed by them and who had furnished work and materials for the exigencies of the city, upon the credit of the authority of the city government, could not be paid.

In the first case the objections are chiefly matters of form and not of substance, viz : that the proper remedy is not by mandamus, but by suit, and that the relator has not made out a proper case for that writ. Upon this part of the case I agree with the opinion given at the special term, and that a mandamus is the proper remedy. I need add nothing to the reasons there given to sustain this position. The only objection on the ground of merits, or which relates at all to substance and not merely to form, is the allegation in the return "that the said Reynolds has not performed the said contract in manner and form as alleged in the writ." This is all there is of substance in the reasons given by the defendant for not performing this contract, and this is a mode of pleading non-performance which has always been held bad, even on general demurrer. It cannot therefore be available to the defendant on this occasion, without overturning all the well settled rules of pleading.

In the second case also, the objections are chiefly formal, relating more to the remedy than to the right; and so far as they do embrace any substantial merits they are founded on alleged omissions to comply with certain regulations and ordinances adopted for the government of this class of business.

In both cases the common council were acting within the legitimate scope of their authority in authorizing the contracts : in both, the contracts were made by the competent authority and faithfully executed by the contractors. Nay more, in both instances the contractors and their sureties were bound in large sums to perform the work; were required by the proper department to perform it, under a heavy penalty on themselves and their sureties. The work when done was accepted by the proper department, and the common council, acting within its legitimate powers, sanctioned the contracts and their performance, and or-

The People *v.* Flagg.

dered the amounts to be paid.   Under these circumstances it is manifest that the relators have each a valid cause of action, which they could enforce by suit against the corporation and by execution against its property.   If such a suit had been brought for work done for the corporation, by order of the common council and the proper department, it certainly would not lie in the breast of another department to nullify all their action and thus arrest the progress of the municipal government.   And the fact that the claimants, avoiding the delays of a suit, have sought the summary remedy by mandamus, does not change the rights of the parties.   It may well be that if either of the contracts had been made in absolute violation of law, so as to be void, the municipal officer proceeded against in the attempt to enforce them might set up that as a defense.   But such are not the defenses set up here.   They are mere matters of irregularity and not of want of power or of transcending what has been actually conferred, and as such may be waived, as they have been in these cases, by the party bound.

So too, it might be competent for the financial officer of the city to avail himself of a defense that the claimants have not performed their contracts.   But that has not been set up in a manner available under any system of pleading that ever prevailed in our courts ; and the cases stand before us in the bald and naked aspect of contracts made by competent authority duly performed, the performance accepted by the proper department, and the debts acknowledged and ordered to be paid by that branch of the municipal government which alone has the power so to direct.

The judgment should be for the relators in both instances, and peremptory mandamuses issue.

[NEW-YORK GENERAL TERM, December 5, 1853.   *Edwards, Mitchell, Roosevelt* and *Morris*, Justices.]