By the Court—Hoffman, J.
The first and an important question is, whether the twelfth section of the charter of 185B applies to the case. The question is one of great practical moment beyond the decision of the present action. The counsel of the defendants insists that it controls. The counsel of the plaintiffs has made several points to show that it is inapplicable.
That section provides “ that all work to be done, and all supplies to be furnished for the corporation, involving an expenditure of more than $250 must be by contract founded on sealed bids, or on proposals made in compliance with public notice for the full period of ten days; and all such contracts, when given, shall be given to the lowest bidder, with security.”
In the case of Brady v. The Mayor, &c., of New York, in this court, (2 Bosw., 173, and 7 Abb., 238,) it was held, that where a contract under which work had been done was void, because entered into in violation of this provision of the charter, the contractor could not recover for the work in any form; neither under the contract, nor as upon a quantum meruit. A subsequent ratification was of no more validity than the original contract. If this were allowed, this restriction in the charter would become practically null, and the officers and agents through whom alone the corporation can act, might disregard the statute, and in practice repeal it. The difficulty lies, not merely in the want of original *89 power in the agents to make the contract, but in the want of power in the corporation itself to make the contract, otherwise than in the mode prescribed by the charter.
If then the present case is within the provision, nothing short of an express contract entered into after full.compliance with its directions, could be binding upon the corporation.
It may be, as the learned counsel of the plaintiffs contends, that in the ordinary acceptation of the terms, the hiring of a pier for public purposes was neither “ work done,” nor “ supplies furnished.” Yet an enlarged etymological sense of the word “supply” comprises anything yielded or afforded, to meet a want.
It is clear however, that there must be a class of cases, in which the very object of the exercise of a municipal power, would indicate the inapplicability of the provision. The establishment of a market within a particular district of the city calls for the exercise of a discretion in choosing the locality, so as to meet the convenience of the greater number and facilitate the means of cleansing, which might be wholly defeated or impaired if the corporation was compelled to advertise and take the plot of ground offered by the lowest bidder. The selection of piers for the purpose of casting away the offal of the city, falls within the same principle. It would be a misuse of power, to take for this purpose a pier daily thronged with carts and laborers, for loading or unloading the cargoes of vessels. The particular force and direction of the tide may render one spot far more eligible than another. The distance from dwelling houses would be another element of consideration.
In the case of The People v. Flagg (17 N. Y. R., 584), it was strongly urged by Judge Comstock that the construction of the phrase “ work to be done ” used in this provision, did not extend it to the making of a survey and maps by a surveyor requiring skill and professional knowledge for its performance. “This would be an unreasonable and mischievous construction of the statute.” Justice Roosevelt was of a different opinion on the facts of that case; and the Court abstained from expressing an opinion upon the point.
It appears to me that the principle contained in the opinion of Judge Comstooic applies with even greater force to the cases I have suggested, than to the one before him.
*90 It may perhaps be found upon a more extended investigation of the extent and meaning of the provision, that it does nob apply to cases of the acquisition of real property by purchase or hiring for the purposes of municipal government, within acknowledged powers of the corporation. It may be that the phrase is used in-the sense in which it is employed in the commercial law, and in various statutes, as relating merely to personal property, going into or forming part of something else or contributed for the use of something else, or towards its efficiency. The maritime doctrine as to supplies for ships, the State Statutes in aid of material-men are instances of this nature. (4 Wheat., 438; Kent’s Com., vol. 3, p. 169; 1 Blatch. & Howl., 177; 2 R. S., of 1830, 493; The Calisto, Daveis R., 31.)
It is in this sense that the phrase is used in various enactments connected with the government of Hew York. Thus, in section 13 of the charter as amended in 1849, there is constituted an Executive Department called The Department of “ Repairs and Supplies,” having cognizance of all repairs and supplies of and for roads and avenues, pavements, fire engines, &c.
So in section 14, the department of streets and lamps shall have cognizance of procuring the necessary supplies for, and of lighting the public streets, &o
And section 23 of the same chapter provides, that “ all contracts to be made or let by authority of the Common Council for work to he done or supplies to be furnished," and all sales of personal property shall be made by the appropriate heads of departments, under such regulations as shall be established by ordinances.
All the previous sections establishing departments contemplate expenditures distinct from any acquisition of real estate. Ho such power is any where granted to or is to be inferred as possessed by either of them.
But without pursuing this subject further, or attempting to define either what is comprehended in or what is excluded from the purview of the provision in question, it is sufficient to say, that in our opinion the hiring of a pier by the corporation for the purpose of removing offal from the city, is not within it.
We must, therefore, proceed to the other questions in the cause.
2. The right to hire a pier for the purpose of fulfilling the duty of the corporation in the removal of nuisances, is a power *91 inherent in the Common Council, because necessary or important for the exercise of an admitted and vested • power. The charters gave the corporation power to hold land in fee simple to them and their successors forever; but a restriction was imposed in the Montgomery Charter, that the annual income should not exceed £3,000 sterling. (See upon the subject of this restriction, Kent’s Notes, note 48; 2 Coke’s Inst., 722, and Flagg v. Lowber, 7 Abb. R., 176.)
Whatever may be the legal operation of this restriction at the present day, it was a restriction upon the right to hold lands in perpetuity, which right, upon common law principles belongs to a corporation. (2 Kent’s Com., 281.) It does not affect the present question, which relates to a power to hire lands for a particular period, in order to fulfill a duty, and in the exercise of a power necessary, for municipal purposes. That authority which is material in order to execute the purposes for which a corporation is created, is possessed by implication. (1 R. S., 1830, 600, § 3; 4 Hill, p. 39, 13 Mass. R., 199.)
The late case of The People and Flagg v. Lowber (7 Abb. R., 176), illustrates this view. The power to purchase land for a market site was held to attend and result from a power to establish markets, and the restriction as to income before referred to, was held inapplicable.
3. Whether the Common Council have lawfully done anything out of which its liability for the rent can arise is in the next place to be examined.
As I understand the claim, it is rested upon these several propositions : First. That the Comptroller could create this liability, and has done so; next, that the Mayor could do it, and his engagement is proven; again, that there was an implied ratification of the payment by the Comptroller, from the assumed knowledge of his disbursements, and therefore a hiring by the Common Council; and lastly, that the resolution of April 17th, 1852, and the contract with Reynolds, establish the responsibility.
The two first propositions may easily be disposed of. There is not the semblance of power in the Comptroller or Mayor, to hire property for the purposes in question, and bind the corporation to pay for it.
*92 The next ground, of an implied ratification, is also unsatisfactory. It could not, I think, extend further than to prevent the corporation from recovering back the money paid over, admitting that this would be its effect.
The ordinance of May, 1849, gave to the City Inspector power to remove dead animals, &c., and to cast them into the river, three hundred feet from the nearest wharf, or otherwise to dispose of them as most effectually to secure the public health. The first clause of the ordinance may, perhaps, be so reasonable as that the Inspector would be warranted in going upon a private pier, merely to cast the carcasses into the river. But there is nothing in it to warrant the hiring of any pier or wharf for any of his official purposes.
The possession of the pier taken by Reynolds, under the direction of the City Inspector and Mayor, in July, 1851, was forcible. It did not profess to be in the exercise of a power to contract; and there was no such power in either of them.
The contract with Reynolds, of the 24th of April, 1852, was valid, and has been decided to be so. (16 Barb., 503.) By that contract, the corporation, by A. W. White, City Inspector, agreed, “in pursuance of the first section of an ordinance of the 17th of April, 1852, to designate and set apart for the use of the City Inspector, two of the docks and slips of the city of New York, one on the East river, and the other on the North river, to be used by Reynolds, under the direction of the City Inspector, as a place of landing of the boats lo be employed for the removal of the offal, dead animals, &c., the free access to and use thereof, to be secured to said Reynolds.
The first section of the ordinance does not contain any power for any officer to hire a pier. It provides that there shall be designated two docks or slips of the city, for the use of the City Inspector, to be under his control, and to be used by him as a place of landing for the boats required.
I have concluded that the corporation, in this ordinance, did nothing more than to agree to designate two of the piers actually owned by the city, to be used for these purposes; and that the liberal construction insisted upon, that they covenanted to designate one of their own piers, or to procure a pier of another party, is inadmissible.
*93 Thus it stands, under all these documents, that the corporation was itself to designate a public pier, and. did not even give the City Inspector power to do so; and what is of more importance, a construction cannot be sustained which implies the hiring of a private pier, or the delegation of any power to any one to do so.
Now, it is true, and sustained by eases, some of which were cited, that it is a sound rule of law, that whenever a corporation is acting within the scope of its legitimate purposes, all parol contracts made with its authorized agents are express promises by the corporation; and all duties imposed upon them by law, and all benefits conferred at their request, raise implied promises for which an action may well lie. (Story, Justice, 7 Cranch., 306; Fister v. La Rue, 15 Barb., 323; Randell v. Van Vechten, 19 Johns. R., 60; Clarke v. Guardians of Cuckfield Union, 11 Eng. L. & Eq. R., 442.)
But in all such cases, either a duly authorized agent fixed the liability of the body, or it recognized the obligation to pay, by accepting the work or services or supplies. Where it possesses original power to make the contract, it may recognize a duty to pay for what has been done without contract, although if destitute of such original power the case is different. (The People v. Flagg, 17 N. Y. R., 586.)
In the present case, there was no act which could be treated in any way as tending to a ratification, except the unauthorized payment of rent, by the Comptroller, on some occasions. This is wholly insufficient.
It is impossible, also, to support the proposition, that the mere fact of rendering services to the corporation, and of that body reaping a benefit from them affords a ground of action. (17 N. Y. R., 591.)
These conclusions render it unnecessary to discuss the question, whether as the origin of the possession was the forcible entry upon the plaintiffs’ land, a suit for the value of the occupation, as for rent, can be maintained. The City Inspector and Reynolds, perhaps the Mayor, were, on the facts found, trespassers; could have been turned out, and been made responsible for mesne profits. (1 Wend., 134; 1 R. L., 1813, p. 444, § 31; Smith v. Stewart, 6 Johns., 46; Osgood v. Dewey, 13 id., 240.)
A new trial must be granted, with costs to abide the event.
Ordered accordingly.