THE PEOPLE *ex rel.* John Green *vs.* FERNANDO WOOD, Mayor of the city of New York.

When a party has a remedy by action, he cannot have a mandamus.

One who has entered into valid contracts with a municipal corporation, may, after having performed the same on his part, maintain an action against the corporation, to recover the amount due to him. Hence a mandamus will not be granted, in such a case, either against the corporation, or any officer thereof, to compel such officer to facilitate the satisfaction of the demand, by signing a warrant for its payment.

Thus, where the relator, having performed certain work and labor under and in pursuance of contracts between him and the city of New York, procured his account therefor to be approved by the city inspector, examined and found correct by the auditor, and approved by the comptroller, but the common council did not order it to be paid, nor take any specific action in relation to it ; *Held* that the relator was not entitled to a writ of mandamus to compel the mayor to countersign a warrant, drawn by the comptroller upon the chamberlain, for the amount of the debt.

APPEAL from an order made at a special term, directing a peremptory mandamus to be issued. On the 25th of July, 1859, the mayor and commissioners of health adopted a resolution directing the city inspector to execute a contract with the relator for the removal of dead horses, offal, &c. &c. from the streets and from the slaughter houses, and other places in the city of New York, at a stipulated price of $750 per month. On the 28th of July, 1859, an agreement, in writing, was signed by the city inspector and the relator, in pursuance of this resolution. On the 7th of September, 1859, a further resolution was adopted by the mayor and commissioners of health, increasing the price to be paid to $1000 per month, and calling for additional work. On the same day, a further agreement was signed by the city inspector and the relator. By this agreement, payments were to be made in monthly installments of $1000 each. The relator entered upon the performance of the work, and was regularly paid until the month of May, 1860. A warrant for the payment for the month of May, being $1000, having been drawn by the comptroller, upon the chamberlain, payable to the relator, or order, was presented to the mayor for his signa-

ture.   The mayor refused to countersign the warrant, assigning as a reason that the work called for by the contract had not been performed by the relator, and that he was therefore not entitled to payment.   The relator thereupon applied for a mandamus to compel the mayor to countersign the warrant.   An alternative writ issued, and the mayor made a return thereto.   The relator demurred to the return.   The defendant having joined issue on the demurrer, upon argument, at a special term, a peremptory mandamus was ordered, and from this order an appeal was taken by the defendant.

*Greene C. Bronson,* for the appellant.

*A. R. Lawrence, Jr.* for the respondent.

*By the Court,* MULLIN, J.   It seems quite clear that the contracts between the relator and the board of health, for the removal of offal &c. from the streets of the city, under which the relator claims relief in this proceeding, are valid and binding on the city.   Being valid, if the relator has performed the labor agreed to be performed by him under and pursuant to the contracts alluded to, there can be no doubt but that he may maintain an action against the city, to recover the compensation to which he is entitled.   When a party has a remedy by action, he cannot have a mandamus.

The relator's counsel concedes the correctness of the position, but insists that inasmuch as he has performed the labor and procured his account therefor to be settled, audited and allowed by the officers of the city government, and having procured from the comptroller a warrant on the treasury for the payment of the amount due, which it was the duty of the mayor to sign without assuming to pass upon the question whether the work called for by the contract had or had not been performed, there was no necessity for an action against the city, and that it was the duty of the mayor to affix his

name to the warrant, and he having refused, it is the duty of the court to compel him to do it.

The counsel for the defense insist that the mayor has a discretion as to whether or not he will countersign warrants drawn by the treasurer, and that it is his duty to refuse to do so when he knows that the service in payment of which the warrant is drawn has not been performed; and that in this case it being conceded that the work was not performed in conformity to the contract, the mayor cannot be compelled to countersign.

The 22d section of the amended charter of 1857 creates a department in the city government, of finance, under the control and management of the comptroller of the city. All accounts rendered to or kept in the other departments are made subject to the inspection and revision of the department of finance. It is authorized to settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor. It also provides for a bureau in the same department for the reception of all moneys belonging to the city, and for the payment of moneys on the warrants drawn by the comptroller and countersigned by the mayor and clerk of the common council. The chief officer of which is the chamberlain.

The same section provides for another bureau in the same department, to be called the auditing bureau. It is authorized to revise, audit and settle all accounts in which the city is concerned as debtor or creditor. It is further provided, that all moneys drawn from the city treasury shall be upon vouchers examined and allowed by the auditor and approved by the comptroller and filed in his office.

By section 18, subdivision 4, it is made the duty of the mayor to exercise a constant supervision over the conduct and acts of all subordinate officers, * * * and generally to perform all such duties as may be prescribed for him by the charter and city ordinances, and the laws of the state and of the United States. Section 32 provides that, until

the common council shall otherwise direct, the existing ordi-
nances shall apply to the departments therein mentioned, so
far as they are applicable and not inconsistent with the said
act. When this question arose, an ordinance in the words
following was in force, to wit: "The comptroller of the city
shall draw and sign all warrants on the chamberlain for mon-
eys which he is authorized to draw from the treasury, and
present the same with the vouchers to the mayor, to be coun-
tersigned by him and the clerk of the common council re-
spectively.

Why does the legislature require a warrant on the treasury
to be countersigned by the mayor and clerk of the common
council ? These officers have nothing to do with auditing or
settling accounts or claims, so that they can thereby be in-
formed of their justice or propriety. The object, however,
must be as a guard against fraud, to secure the treasury
against the negligence or dishonesty of those officers who are
intrusted with the settlement of claims against the city. If,
however, the mayor and clerk have, as is contended, no right
to refuse to countersign the warrants of the comptroller, how
can they act as a guard against fraud on the treasury ? If
they have no discretion, then they are bound to countersign
every draft drawn in proper form. The accounts of the
clerks in the mayor's office, and in the office of the clerk of
the common council, are required by law to be audited by
some officer in the finance department. Now suppose a draft
is presented to either of these officers, in favor of one of his
clerks, for services which he knows the clerk has never ren-
dered; is he to countersign it ? Is he to close his eyes to the
fraud, and become a participator in perfecting it ? Such a
proposition cannot, it seems to me, be supported. If the
object in requiring these officers to countersign was to pre-
vent abuse, to protect the treasury from being plundered, to
pay unfounded or fraudulent claims, we must give effect to
the intent, by holding the officers to be clothed with the right
to refuse to countersign a warrant on the treasury drawn to

The People *v.* Wood.

pay a claim which they know to be dishonest, or which they are not satisfied is an honest and legal one.

I understood the relator's counsel to admit that these officers were not bound to countersign a warrant which they knew to be drawn to pay a fraudulent claim; but he is of the opinion that it is the only case in which they are at liberty to refuse. Does it matter whether the claim is utterly unfounded, or whether the amount allowed is grossly extravagant? Either is fraudulent, and it is the duty of the mayor and clerk to interfere and prevent its successful accomplishment as well in the one case as in the other. It may be said that it is the right of the mayor and clerk to refuse to countersign in the cases supposed, but that they have no such right when a claim has been audited and allowed by the proper officer and a warrant drawn therefor. In other words, that it is the duty of these officers to countersign in all cases except when they know the claim to be fraudulent in whole or in part. If these officers are to act as guardians of the treasury—if they are to protect, so far as in them lies, the city from the payment of unfounded and dishonest claims—they must have the means of knowing whether the claim is one proper to be paid, and it is their duty to inform themselves in regard to it, and countersign or refuse, as they may deem proper, after such investigation. In this way, and in this way only, can these men effectually protect the treasury. It is said that to require these officers to investigate every claim, to pay which a warrant is drawn, and to permit them to suspend all payments until these investigations are made, is to block the wheels of government and prevent all payments from the treasury. The first answer to this suggestion is, that if it is impossible for these officers conscientiously to discharge the duty of guarding the treasury by countersigning warrants only for such claims as they are satisfied after investigation are just, the law which requires them to countersign should be repealed. An officer who will countersign a warrant which he is not sat-

isfied is right and just, is faithless to his trust and unfit to be employed. But I apprehend the difficulties and delays which would attend an intelligent and conscientious discharge of the duty, are more imaginary than real. I take it for granted that vouchers are required in support of every claim allowed against the city, and in all doubtful cases, or where the demand does not arise upon a contract providing for the payment of specific sums, the oath of the creditor is required as to the performance of the service, or the furnishing of the property for which payment is sought. When the auditing officers are honest and capable men and the vouchers are properly prepared, there can be no great difficulty in satisfying a business man of the justice and propriety of the claim. If he is unreasonably captious and hypercritical, he should be removed. While I entertain no doubt but the suggestions above thrown out as to the duty of the mayor and clerk are entirely correct, yet it is not necessary to the decision of this case to go the length contended for. In this case, it is admitted that the labor which the warrant in question was drawn to pay has never been performed. Can it be possible that the mayor is bound to countersign a warrant to pay for services which he *knows* have never been rendered ? The proposition is so monstrous that I cannot entertain it for a moment. If an officer, charged by the charter with the duty of exercising "a constant supervision over the conduct of all subordinate officers," may be compelled by courts of justice to aid in drawing from the treasury of the city moneys in payment of an unfounded or fraudulent claim, then I confess the courts have become the most convenient and efficient instruments of outrage, oppression and robbery. The counsel for the city yielded, as I understood him, the point that the clerk of the common council acted ministerially, merely, in countersigning drafts, and that he had no discretion, but was bound to countersign. I cannot assent to the proposition. Both the clerk and mayor are required to countersign, and both must be clothed with the power to refuse to aid in

taking money from the treasury, unless they are satisfied it is just and right to do so.

I have thus far treated the question as if the charter alone regulated the manner in which money should be drawn from the treasury. The common council have by ordinance made regulations on the same subject. The only difference between the ordinance and charter, in this respect, is that the latter requires the vouchers to be presented to the mayor with the warrant to be countersigned. If I am right in my construction of the charter, the ordinance requires nothing in addition to it. Neither the mayor nor the clerk can act understandingly without the inspection of the vouchers. The ordinance merely expresses what is fairly implied from the language of the charter.

There is still another view of this case, which it seems to me is conclusive against the relator: it is this. The mayor and clerk owe him no duty; they act for the corporation; they are its agents and servants, and the relator cannot in this respect require them to perform any duty toward him. A creditor of the city performs his duty when he appears before the proper board or officer and procures his claim to be audited and settled. It is then the duty of the city to pay. He is under no legal obligation to wait on the comptroller for a warrant, and, having procured it, to procure the signature of the mayor and clerk of the common council. The corporation must see to it that the debt is paid; its servants must go through the ceremonies necessary to get the money from the treasury with which to pay the debt. The vouchers are required by the ordinance to be submitted to the mayor with the warrant. Was it contemplated by the framers of the ordinance that the vouchers should pass into the hands of the creditor, and that he, if dishonest, should have an opportunity to alter them? It seems to me not. There is no law, that I can find, which releases the corporation from paying its debts in the same manner as any private citizen. If, when a warrant is presented to the mayor to be countersigned by

him or his clerk, the mayor unjustly or unreasonably refuses to countersign it, the court on the application of the corporation will compel him to do it. His duty is to it, not to the creditor. It is said that if the mayor or clerk may refuse to countersign, and the court will not by mandamus compel them to do so, the creditor is remediless. If he sues and recovers a judgment, and a warrant is drawn to pay that, they may still refuse, and the creditor be no nearer his pay than before suit. This suggestion presents the points of difference between the case at bar and the case of *The People* v. *Flagg*, (16 *Barb.* 503.) In the case suggested, and in the case cited, the claim has been liquidated and settled by tribunals having authority finally to liquidate and settle the claim; and all that is done thereafter is done in giving effect to such final determination. In such cases there can be no discretion in either the comptroller who draws the warrant or the mayor or clerk who countersigns. But where the settlement of the claim is by a mere subordinate officer, whose action is not made final, and other officers are appointed to oversee his actions and to guard against any improper or fraudulent action on his part, it seems to me the case is one where the duty of the supervising officer to interfere in case of the illegal or fraudulent action of the subordinate auditing officer, is entirely clear. It is not necessary for us in this case to disturb the case of *The People* v. *Flagg*. It may stand and yet relief by mandamus be denied in this case.

I am therefore of the opinion, 1st. That the relator has a remedy at law, and for that reason a mandamus cannot be awarded to him. 2d. The mayor and clerk of the common council owe the relator no duty, and that they cannot be required by him to countersign his warrant. The corporation is the only party who can compel them to act. 3d. Those officers have in this case, by the charter, a discretion, which they may exercise in countersigning or refusing to countersign a warrant on the treasury, and the court will not compel them to countersign in opposition to their own sense of

The People *v.* Wood.

right. 4th. That those officers cannot be compelled to act when it appears that the service to pay which the warrant is drawn has not been performed, or is otherwise fraudulent or illegal.

The order of the special term should be reversed.

CLERKE, P. J.   The provisions of the charter and of the ordinances, declaring that no money can be drawn from the city treasury, except on a warrant drawn and signed by the comptroller and countersigned by the mayor and clerk of the common council, is an arrangement merely for the protection of the corporation against fraud.   It is a part of the scheme of internal economy for the more convenient regulation of its own business, and imparts no legal rights whatever to any other person.   The duties of the municipal officers, in relation to those provisions of the charter and ordinances, are due and only due to the body of whom they are the servants.   A writ of mandamus lies in favor of one person against another, only of course when the latter owes him a legal right.   If any one has a demand for a debt against the corporation, as that body can be sued in an ordinary action, proceedings by this writ are not maintainable; nor are they maintainable against any officer of that body to compel him to facilitate the satisfaction of that demand.   If he refuses to do what the charter and ordinances prescribe, he fails to do what his duties to the corporation require; and to it, and to it alone, I repeat, he is responsible.   But we have been referred to the case of *The People* v. *Flagg*, (16 *Barb.* 503,) in which this court at general term, in the first district, granted a mandamus to compel the comptroller of the city to draw his warrants upon the chamberlain, for certain sums, due on a contract, by the city, to Reynolds, the relator.   We consider the doctrine, laid down in this case, carried to such extent as to have a tendency to confound the statutory distinctions always observed between this remedy and the ordinary remedies which the law affords.   Nevertheless, if a case precisely of the same nature, or precisely analogous to

The People v. Wood.

it, was now before us, we should consider it our duty to follow the decision referred to; but we are certainly not inclined to go one step further. In *The People ex rel. Reynolds* v. *Flagg*, it expressly appeared that the work, when done, was not only accepted by the proper department, but the common council, acting within its legitimate powers, sanctioned the contracts and their performance, *and ordered the amounts to be paid*. These circumstances, it was then supposed by the court, took the case out of the general rule, and imposed a duty on the comptroller towards the relator, which the latter had a right to enforce by the writ of mandamus. In the case before us, although the bill upon which the warrant in question was drawn was approved by the city inspector, examined and found correct by the auditor, and approved by the comptroller, yet the common council did not order it to be paid, or take any specific action in relation to it. In the case also above referred to, the proceedings were instituted against the financial officer of the corporation who had special control of the money which the common council had ordered to be paid; but this proceeding is against the mayor to compel him to perform an act which, when performed, is intended for the protection of the corporation, and not for the benefit of the relator; although the result doubtless would have been beneficial to him in facilitating payment of his demand. This incidental advantage, however, does not constitute a legal right. If the corporation is indebted to the relator on any contract, or for any services performed, and its proper officers refuse to pay him, or to do any thing necessary to enable him to obtain his money out of the city treasury, his only remedy is by action. If he cannot establish and enforce his claim in this way, he is without a remedy.

The order of the special term should be reversed, and the writ of mandamus denied with costs.

BARNARD, J. concurred.        Order reversed.

[NEW YORK GENERAL TERM, November 4, 1861. *Clerke, Mullin* and *Barnard*, Justices.]