same matters were litigated, even where it appears by the record that they might have been. (Davis *a.* Talcott, 14 *Barb.*, 611; Young *a.* Rummell, 2 *Hill*, 478.)

IV. It is certain that the plaintiff did not, in fact, recover in the former suit for the items claimed in this.

BY THE COURT.*—A judgment docketed or enrolled is *res judicata*, as to the matter in controversy, until reversed or vacated.

In an equity action for an account, sums received by the accounting party after the commencement of the action may be included in the account taken; but in case those sums are not included, the party entitled to them is not precluded from commencing another action to recover the sums not included in the former accounting.

The judge at special term having consolidated two former actions, and precluded thereby the giving evidence of the receipts of money subsequent to the commencement of those actions, and that order having been acquiesced in by the parties, the case here is relieved from the difficulty that might have otherwise arisen.

Judgment for the plaintiff on the verdict, with costs.

---

## THE PEOPLE *on rel.* GREEN *a.* WOOD.

*Supreme Court, First District; General Term, January,* 1862.

MANDAMUS.—NEW YORK CITY CHARTER.

A *mandamus* cannot be granted when a remedy may be obtained in the premises by action.

The mayor of New York city is under no obligation to a creditor of the city to countersign his warrant on the chamberlain. The provision of the city charter, requiring warrants to be countersigned by the mayor and clerk of the Com-

---

mon Council, is for the protection of the city, and not for the benefit of its creditors.*

*It seems,* that those officers ought to refuse to countersign warrants for the payment of bills which they believe to be unjust.

The People *a.* Flagg (16 *Barb.*, 503), explained and limited.

Appeal from an order granting a peremptory mandamus.

On the 25th of July, 1859, the mayor and commissioners of health adopted a resolution directing the city inspector to exe-

---

* In THE PEOPLE *a.* HAWS (*Supreme Court, First District; Special Term, January,* 1862), it was *Held,* that a statute having been enacted, directing a demand against the Corporation of the city, to be ascertained by arbitration, and directing the comptroller to pay it when so ascertained,—a mandamus would not lie to compel him to pay it when thus ascertained, until money had been raised therefor, or an appropriation made out of moneys applicable thereto.

The case was an application by Messrs. Baldwin and Jaycox, for a mandamus against Robert T. Haws, the comptroller of the city of New York.

The relators were the lowest bidders for constructing the gate-houses of the new Croton Reservoir. The Croton Aqueduct Board awarded the contract therefor to them, subject to confirmation by the Common Council. The Common Council refused to confirm the award, but gave the contract to other bidders. Baldwin and Jaycox then instituted a suit, and a proceeding by mandamus to obtain the contract, but were unsuccessful, the court holding that they had no claim against the city. (See the case, 9 *Ante,* 253 ; 10 *Ib.*, 144.) By the act of 1860, relating to the Croton Aqueduct (*Laws of* 1860, 774, ch. 449, § 4), it was provided that damages due to contractors, to whom the board had awarded the contract, might be ascertained by arbitration ; and if the arbitrator's report should be in favor of the party claiming damages, " such party shall be entitled to recover the same ; and upon presenting a certified copy of such report and order of confirmation to the comptroller of the city of New York, it shall be the duty of said comptroller to draw his warrant for the amount thereof, and to pay the same."

Arbitrators were appointed and an award made for upwards of $61,000, and Baldwin and Jaycox now applied for a mandamus to compel the comptroller to draw his warrant for the amount.

*Daniel S. Dickinson,* attorney-general, and *L. R. Marsh,* for the motion.

*H. H. Anderson,* for the comptroller, resisted the application, chiefly on the grounds that the Legislature had no power to make the Corporation liable without its consent ; that the act was unconstitutional so far as it sought to charge the Corporation, and the award was a nullity ; that there was no money appropriated to pay such an award, and that the Legislature had, in 1861, enacted that no money should be expended for purposes other than those to which they were appropriated by the Common Council.

LEONARD, J.—Without referring to the constitutional validity of the law of 1860, under which the relators apply, or to any of the objections raised by the defendant as to the manner in which it was executed, or to the merits of the relators' demand, it appears to me a sufficient answer to this application, that the

cute a contract with the relator for the removal of dead horses, offal, &c., &c., from the streets and from the slaughter-houses, and other places, in the city of New York, at a stipulated price of $750 per month. On the 28th of July, 1859, an agreement, in writing, was signed by the city inspector and the relator. On the 7th of September, 1859, a further resolution was adopted by the mayor and commissioners of health, increasing the price to be paid to $1,000 per month, and calling for additional work. On the same day, a further agreement was signed by the city inspector and the relator. By this agreement payments were to be made in monthly instalments of $1,000 each. The relator entered upon the performance of the work, and was regularly paid until the month of May, 1860. A warrant for the payment for the month of May having been drawn by the comptroller, was presented to the mayor for his signature. The mayor refused to sign the warrant, then assigning as a reason that the work called for by the contract had not been performed by the relator, and that he was therefore not entitled to payment. The relator thereupon applied for a mandamus to compel the mayor to sign the warrant. An alternative writ issued. The mayor made a return thereto, alleging that the work had not been performed. The relator demurred to the return. The defendant

---

relators have not made it appear that there has been raised any sum of money, by tax or otherwise, with which the comptroller can pay the said sum.

On the contrary, the comptroller states by affidavit that nothing has been raised for the payment of this demand, and no appropriation therefor has been made, and he has no money as such officer out of which he can pay the said sum.

The money against which the comptroller is authorized or permitted to draw his warrants, now in the city treasury, has been raised by taxation under specific appropriations for certain defined purposes.

It is especially provided by Sess. Laws of 1861, ch. 93, § 5, that none of the money appropriated for specified objects shall be applied to any other.

The comptroller has no money which he can apply to the demand of the relators, without violating this law.

The money should be appropriated and raised by law, for the payment of the relators, if the Legislature deem it proper to require the comptroller to pay them. When the law has required the people to raise the money, and the tax has been levied, then the comptroller will owe to the relators a direct duty to draw his warrant and pay them.

I think there must be further legislation before the peremptory writ of mandamus can be issued, or the relators must proceed by action to obtain and enforce the collection of their demand by judgment at law.

The motion is denied, with $10 costs of opposing.

The People *on rel.* Green *a.* Wood.

having joined issue on the demurrer, upon argument, a peremptory mandamus was ordered, and from this an appeal is taken.

*H. H. Anderson* and *Charles O' Connor*, for the appellant.—
I. It was not the duty of the mayor to sign the warrant in question. The mayor and the commissioners of health have no authority to bind the city by such contracts as those set forth in the alternative writ. (*Laws of* 1850, 597; *Ib.*, 607, § 1, subd. 4; *Ib.*, 609, § 6.)

II. But if the contract is binding upon the Corporation, the allegation in the return, that the work has not been performed, admitted by the demurrer to be true, is a complete bar to the relator's application.

III. Whether the writ sought shall or shall not be issued, is a matter of discretion with the court; and the mayor, as the chief executive officer of the city, should not be compelled to be a party to the payment of money from the treasury for work which has never been performed. The relator has an ample remedy by suit against the Corporation. (People *a.* Supervisors of Westchester, 15 *Barb.*, 617; People *a.* Flagg, 16 *Ib.*, 503; *Ex parte* Farmers' Ins. Co., 6 *Hill*, 243.) By the ordinance of the Corporation the comptroller is to present all warrants, "with the vouchers," to the mayor for his signature. The vouchers are presented, that the mayor may see if the claim is authorized, and if it is known by him that the claim is an improper one, it is his duty, under his official oath, to refuse to sign. It may well happen that the mayor, as chief executive officer of the city, may be informed of objections to claims, which are unknown to the comptroller.

*A. R. Lawrence, Jr.*, for the respondents.—I. A mandamus is the proper remedy to compel the appellant to countersign the warrant set forth in the writ. 1. In countersigning warrants which have been drawn by the comptroller, the mayor acts as a ministerial officer, and has no discretionary power in relation thereto. (1 *Laws of* 1857, 880, § 22.) 2. The writ issues where the act sought to be enforced is purely ministerial. (*Crary on Special Proceedings*, 278 et seq.; People *a.* Edmonds, 15 *Barb.*, 529; S. C., 19 *Ib.*, 468; Huff *a.* Knapp, 1 *Seld.*, 65; Boyce *a.* Supervisors of Cayuga, 20 *Barb.*, 294; *Ex parte* Heath and others, 3 *Hill*, 43; Achley's Case, 4 *Abbotts' Pr.*, 36.)

II. The alternative writ shows that the relator has a clear legal right to invoke the aid of the court by way of mandamus in this case, and that he has no other adequate remedy. (*Crary on Special Proceedings*, 273, and cases cited.) 1. The bill of the relator has been settled, adjusted, allowed, and approved by every officer whom the charter requires shall pass upon it, as a condition precedent to his right to receive pay upon it. (1 *Laws of* 1857, 879, 880.) 2. And the warrant has been presented to the appellant, and a specific demand made upon him to countersign the same, with which demand he has refused to comply. (Rex *a.* Proprietors, &c., of Canal Co., 2 *Ad. & Ellis*, 477; Rex *a.* Proprietors, &c., Canal Nav. Co., 3 *Ib.*, 217.) 3. The duty of countersigning warrants drawn by the comptroller, is specifically imposed upon the appellant by the charter (§ 22), and the rule is, " that where a duty is imposed by statute on an officer, its performance may be enforced by mandamus, although an action for damages might also lie." (Adriance *a.* Supervisors of N. Y., 12 *How. Pr.*, 224, and cases cited.)

III. Under the provisions of the 22d section of the charter aforesaid, the mayor's duty in relation to warrants is of a purely clerical or ministerial character; and when a bill has been properly approved, as in this case, by the head of the department under whose direction and supervision the work has been performed; when it has been examined and allowed by the auditor of accounts, as required by the charter; when the comptroller has approved of the bill and has settled and adjusted the claim, the mayor has no legal power to refuse his signature to the warrant. (People *a.* Flagg, 16 *Barb.*, 506, 507.)

IV. For the reasons above given, the mayor is precluded from alleging that the work of the relator has not been performed according to contract.

V. The allegation on the part of the appellant, that there is no amount due to the relator, is a mere conclusion of law, and of course is not admitted by the relator upon the demurrer as a matter of fact. (People *a.* Commissioners of Highways, 11 *How. Pr.*, 89.)

VI. The relator was obliged to demur to the return, instead of taking issue on the facts, for this reason: If he had taken issue with the respondent on the facts, he would thereby have admitted that those facts were, *prima facie*, a sufficient answer

to the writ; and if it had turned out that any of them were true, he would have been bound by such admission, and have been defeated, although in law they constituted no answer to the writ. (People *a.* Finger, 24 *Barb.*, 341.)

BY THE COURT.—MULLIN, J.—It seems to me quite clear that the contracts between the relator and the board of health, for the removal of offal, &c., from the streets of the city, under which the relator claims relief in this proceeding, are valid and binding on the city.

Being valid, if the relator has performed the labor agreed to be performed by him under and pursuant to the contracts alluded to, there can be no doubt but that he may maintain an action against the city, to recover the compensation to which he is entitled.

When a party has a remedy by action, he cannot have a mandamus.

The relator's counsel concedes the correctness of the position, but insists that, inasmuch as he has performed the labor and procured his account therefor to be settled, audited, and allowed by the officers of the city government, designated by the charter to settle all accounts against the city, and having procured from the comptroller a warrant on the treasury for the payment of the amount due, which it was the duty of the mayor to sign, without assuming to pass upon the question whether the work called for by the contract had or had not been performed, there was no necessity for an action against the city, and that it was the duty of the mayor to affix his name to the warrant, and, having refused, it is the duty of the court to compel him to do it.

The counsel for the defence insists that the mayor has a discretion as to whether or not he will countersign warrants drawn on the treasurer, and that it is his duty to refuse to do so, when he knows that the service in payment of which the warrant is drawn has not been performed, and that in this case, it being considered that the work was not performed in conformity to the contract, the mayor cannot be compelled to countersign.

The 22d section of the amended charter of 1857 creates a department, in the city government, of finance, under the control and management of the comptroller of the city.

All accounts rendered to or kept in the other departments are made subject to the inspection and revision of the department of finance. It is authorized to settle and adjust all claims in favor of or against the Corporation, and all accounts in which the Corporation is concerned as debtor or creditor.

It also provides for a bureau in the same department, for the reception of all moneys belonging to the city, and for the payment of moneys on the warrant drawn by the comptroller and countersigned by the mayor and clerk of the Common Council, —the chief officer of which is the chamberlain.

The same section provides for another bureau in the same department, to be called the auditing bureau. It is authorized to revise, audit, and settle all accounts in which the city is concerned as debtor or creditor. It is further provided, that all moneys drawn from the city treasury shall be upon vouchers examined and allowed by the auditor, and approved by the comptroller, and filed in his office.

By section 18, subd. 4, it is made the duty of the mayor to exercise a constant supervision over the conduct and acts of all subordinate officers . . . . . . . and generally to perform all such duties as may be prescribed for him by the charter and city ordinances, and the laws of the State and of the United States.

Section 32 provides that, until the Common Council shall otherwise direct, the existing ordinances shall apply to the departments therein mentioned, so far as they are applicable, and not inconsistent with the said act.

When this question arose, an ordinance in the words following was in force, to wit: the comptroller of the city shall draw and sign all warrants on the chamberlain for moneys which he is authorized to draw from the treasury, and present the same, with the vouchers, to the mayor, to be countersigned by him and the clerk of the Common Council respectively.

Why does the Legislature require a warrant on the treasury, to be countersigned by the mayor and clerk of the Common Council?

These officers have nothing to do with auditing or settling accounts or claims, so that they can thereby be informed of their justice or propriety. The object, however, must be as a guard against fraud, to secure the treasury against the negligence or dishonesty of those officers who are intrusted with the settle-

ment of claims against the city. If, however, the mayor and clerk have, as is contested, no right to refuse to countersign warrants of the comptroller, how can they act as a guard against fraud on the treasury? If they have no discretion, then they are bound to countersign every draft drawn in proper form. The accounts of the clerks in the mayor's office, and in the office of the clerk of the Common Council, are required, by law, to be audited by some officer in the finance department. Now, suppose a draft is presented to either of these officers, in favor of one of his clerks, for services which he knows the clerk has never rendered, is he to countersign it? Is he to close his eyes to the fraud, and become a participator in perfecting it?

Such a proposition cannot, it seems to me, be supported. If the object, in requiring these officers to countersign, was to prevent abuse,—to protect the treasury from being plundered to pay unfounded or fraudulent claims,—we must give effect to the intent, by holding the officers to be clothed with the right to refuse to countersign a warrant on the treasury, drawn to pay a claim which they know to be dishonest, or which they are not satisfied is an honest and legal one.

I understood the relator's counsel to admit that these officers were not bound to countersign a warrant which they knew to be drawn to pay a fraudulent claim; but he is of the opinion that it is the only case in which they are at liberty to refuse. Does it matter whether the claim is utterly unfounded, or whether the amount allowed is grossly extravagant? Either is fraudulent; and it is the duty of the mayor and clerk to interfere and prevent its successful accomplishment, as well in the one case as in the other. It may be said that it is the right of the mayor and clerk to refuse to countersign in the cases supposed, but that they have no such right when a claim has been audited and allowed by the proper officers, and a warrant drawn therefor. In other words, that it is the duty of those officers to countersign in all cases, except when they know the claim to be fraudulent, in whole or in part.

If these officers are to act as guardians of the treasury,—if they are to protect, so far as in them lies, the city from the payment of unfounded and dishonest claims,—they must have the means of knowing whether the claim is one proper to be paid; and it is their duty to inform themselves in regard to it, and

countersign or refuse, as they may deem proper, after such investigation. In this way, and in this way only, can these men effectually protect the treasury.

It is said, that to require these officers to investigate every claim, to pay which a warrant is drawn, and to permit them to suspend all payments until their investigations are made, is to block the wheels of government and prevent all payments from the treasury.

The first answer to this suggestion is, that if it is impossible for these officers conscientiously to discharge the duty of guarding the treasury, by countersigning warrants only for such claims as they are satisfied, after investigation, are just, the law which requires them to countersign should be repealed.

An officer who will countersign a warrant, which he is not satisfied is right and just, is faithless to his trust, and unfit to be employed.

But I apprehend the difficulties and delays which would attend an intelligent and conscientious discharge of the duty are more imaginary than real. I take it for granted, that vouchers are required in support of every claim allowed against the city; and in all doubtful cases, or when a demand does not arise upon a contract providing for the payment of specific sums, the oath of the creditor is required as to the performance of the service, or the furnishing of the property for which payment is sought. When the auditing officers are honest and capable men, and the vouchers are properly prepared, there can be no great difficulty in satisfying a business man of the justice and propriety of the claim. If he is unreasonably captious and hypercritical, he should be removed.

While I entertain no doubt but the suggestions above thrown out, as to the duty of the mayor and clerk, are entirely correct, yet it is not necessary to the decision of this case to go to the length contended for. In this case it is admitted that the labor which the warrant in question was drawn to pay has never been performed. Can it be possible that the mayor is bound to countersign a warrant to pay for services which he knows has never been rendered? The proposition is so monstrous that I cannot entertain it for a moment.

If an officer, charged by the charter with the duty of exercising " a constant supervision over the conduct of all subordinate

officers," may be compelled by courts of justice to aid in drawing from the treasury of the city money in payment of an unfounded or fraudulent claim, then I confess the courts have become the most convenient and efficient instruments of outrage, oppression, and robbery.

The counsel for the city yielded, as I understood him, the point that the clerk of the Common Council acted ministerially merely in countersigning drafts, and that he had no discretion, but was bound to countersign. I cannot assent to the proposition. Both the clerk and the mayor are required to countersign, and both must be clothed with the power to refuse to aid in taking money from the treasury, unless they are satisfied it is just and right to do it.

I have thus far treated the question as if the charter alone regulated the manner in which money should be drawn from the treasury. The Common Council, by ordinance, made regulations on the same subject.

The only difference between the ordinance and charter in this respect is, that the latter requires the vouchers to be presented to the mayor with the warrant to be countersigned.

If I am right in my construction of the charter, the ordinance requires nothing in addition to it. Neither the mayor nor clerk can act understandingly without the inspection of the vouchers. The ordinance merely expresses what is fairly implied from the language of the charter.

There is still another view of this case, which it seems to me is conclusive against the relator, it is this : The mayor and clerk owe him no duty. They act for the Corporation ; they are its agents and servants, and the relator cannot, in this respect, require them to perform any duty towards him. A creditor of the city performs his duty when he appears before the proper board or officer and procures his claim to be audited and settled. It is then the duty of the city to pay. He is under no legal obligation to wait on the comptroller for a warrant, and, having procured it, to procure the signature of the mayor and clerk of the Common Council. The Corporation must see to it that the debt is paid ; its servants must go through the ceremonies necessary to get the money from the treasury with which to pay the debt. The vouchers are required by this ordinance to be submitted to the mayor with the warrant. Was it contemplated

by the framers of the ordinance that the vouchers should pass into the hands of the creditor, and that he should have an opportunity to alter them, or, having procured his pay, to destroy them? It seems to me not. There is no law, that I can find, which relieves the Corporation from paying its debts in the same manner as any private citizen.

If, when a warrant is presented to the mayor to be countersigned by the comptroller or his clerk, the mayor unjustly or unreasonably refuses to countersign it, the court, on the application of the Corporation, will compel him to do it. His duty is to it, not to the creditor.

It is said that if the mayor or clerk may refuse to countersign, and the court will not by mandamus compel them to do so, the creditor is remediless; if he sues, and recovers a judgment, and a warrant is drawn to pay, that they may still refuse, and the creditor be no nearer his pay than before suit.

This suggestion presents the points of difference between the case at the bar and the case of The People *a.* Flagg (16 *Barb.*, 503).

In the case suggested and in the case cited, the claim has been liquidated and settled by tribunals having authority finally to liquidate and settle the claim, and all that is done thereafter, is done in giving effect to such final determination.

In such cases there can be no discretion in either the comptroller who draws the warrant, or the mayor or clerk who countersigns. But when the settlement of the claim is by a mere subordinate officer, whose action is not made final, and other officers are appointed to oversee his action, and to guard against any improper or fraudulent action on his part, it seems to me the case is one where the duty of the supervising officer to interfere, in case of the illegal or fraudulent action of the subordinate auditing officer, is entirely clear.

It is not necessary for us, in this case, to disturb the case of The People *a.* Flagg. It may stand, and yet relief by mandamus be denied in this case.

I am therefore of opinion: 1st. That the relator has a remedy at law, and for that reason a mandamus cannot be awarded to him.

2d. The mayor and the clerk of the Common Council owe the relator no duty, and that they cannot be required by him to

countersign his warrant. The Corporation is the only party who can compel them to act.

3d. These officers have in this case, by the charter, a discretion which they may exercise in countersigning or refusing to countersign a warrant on the treasury, and the court will not compel them to countersign in opposition to their own sense of right.

4th. These officers cannot be compelled to act, when it appears that the service, to pay which the warrant is drawn, has not been performed, or is otherwise fraudulent or illegal.

The order of the special term should be reversed.

CLERKE, P. J.—The provisions of the charter, and of the ordinances declaring that no money can be drawn from the city treasury, except upon a warrant drawn and signed by the comptroller, and countersigned by the mayor and clerk of the Common Council, is an arrangement merely for the protection of the Corporation against fraud. It is a part of the scheme of internal economy, for the more convenient regulation of its own business, and imparts no legal rights whatever to any other person. The duties of the municipal officers, in relation to those provisions of the charter and ordinances, are due, and only due, to the body of whom they are the servants. A writ of mandamus lies in favor of one person against another, only, of course, when the latter owes him a legal right. If any one has a demand against the Corporation, as that body can be sued in an ordinary action, proceedings by this writ are not maintainable, nor are they maintainable against any officer of that body, to compel him to facilitate the satisfaction of that demand. If he refuses to do what the charter and ordinances prescribe, he fails to do what his duties to the Corporation require, and to it, and to it alone, I repeat, he is responsible.

But we have been referred to the case of The People *a.* Flagg (16 *Barb.*, 503), in which this court, at general term, in the first district, granted a mandamus to compel the comptroller of the city to draw his warrant upon the chamberlain, for certain sums due on a contract by the city to Reynolds, the relator. We consider the doctrine laid down in this case carried to such extent as to have a tendency to confound the salutary distinctions always observed between this remedy and the ordinary

remedies which the law affords. Nevertheless, if a case precisely of the same nature, or precisely analogous to it, was now before us, we should consider it our duty to follow the decision referred to; but we are certainly not inclined to go one step further. In the People on relation of Reynolds *a.* Flagg, it expressly appeared that the work, when done, was not only accepted by the proper department, but the Common Council, acting within its legitimate powers, sanctioned the contracts and their performance, and ordered the amounts to be paid. These circumstances, it was then supposed by the court, took the case out of the general rule, and imposed a duty on the comptroller towards the relator, which the latter had a right to enforce by the writ of mandamus.

In the case before us, although the bill upon which the warrant in question was drawn was approved by the city inspector, examined and found correct by the auditor, and approved by the comptroller, yet the Common Council did not order it to be paid, or take any specific action in relation to it. In the case also above referred to, the proceedings were instituted against the financial officer of the Corporation, who had special control of the money which the Common Council had ordered to be paid; but this proceeding is against the mayor, to compel him to perform an act which, when performed, is intended for the protection of the Corporation and not for the benefit of the relator, although the result doubtless would have been beneficial to him, in facilitating payment of his demand. An incidental advantage, however, does not constitute a legal right. If the Corporation is indebted to the relator on any contract, or for any services performed, and its proper officers refuse to pay him, or to do any thing necessary to enable him to obtain his money out of the city treasury, his only remedy is by action. If he cannot establish and enforce his claim in this way, he is without a remedy.

The order of the special term should be reversed, and the writ of mandamus denied, with costs.

BARNARD J. concurred.