## Case No. 2,810.

### In re CLARK.

[9 N. B. R. (1874) 67.] [1]

#### District Court, S. D. New York.

REGISTER IN BANKRUPTCY — COUNTERSIGNING CHECKS—OBJECTION TO ASSIGNEE'S ACCOUNT.

1. The duty of countersigning checks devolved upon the register by the act is a judicial and not a ministerial duty.

2. Creditors are not bound to object to the assignee's account save at a meeting called pursuant to the provisions of the twenty-eighth section of the act [14 Stat. 530].

[Cited in Re Brunquest, Case No. 2,055.]

[On certificate of I. T. Williams, Register in Bankruptcy:]

I, the undersigned register in charge of the above entitled matter, do hereby certify the facts of this case as follows:

That on the 27th day of March, 1871, a meeting of the creditors of the estate of Bininger & Clark, also a meeting of the creditors of the separate estates of said bankrupts was called by an order of the register, under the provisions of the twenty-seventh section of the act, and not pursuant to the provisions of the twenty-eighth section of the act. That at the time said meeting was so called no accounts of any kind whatever had been filed with me by said assignee; that the notice of said meeting sent to creditors contained no notice that the assignee would apply at

---

[1] [Reprinted by permission.]

said meeting for the settlement of his accounts, or for a discharge of his liabilities as assignee, as is required by the twenty-eighth section of said act; that no accounts were filed until the said meeting was actually being held; that said meeting was then adjourned, nothing whatever being done save the filing of said accounts; that after several adjournments, said meeting came on to be, and was, held on the 9th day of October, 1871, at which meeting there was no attendance of any person save Mr. F. N. Bangs acting for the assignee, and Mr. Addoms, a creditor, or an attorney for one of the creditors; that it appeared from the said account then filed that the sum of thirteen thousand nine hundred and fifteen dollars and eighty-three cents had come to the hands of the assignee from the separate estate of the said Clark; that the assignee had paid therefrom to Messrs. Bangs, Sedgwick & North, the sum of two thousand five hundred and seventy-three dollars and eleven cents for their professional services and disbursements in said separate estate, and to the register in charge thereof the sum of ninety-seven dollars and ninety-five cents, and that claims were prosecuted against said estate as follows:

Messrs. Bangs, Sedgwick & North, for professional services and disbursements ...................... $5,187 09
The applicant as assignee......... 238 16
The register, for fees............. 350 00

As a majority in amount of the creditors were not present at said meeting, it devolved upon the assignee to fix the amount of the dividend, and thereupon the said Bangs, for the said assignee, declared a dividend of ten per cent. upon the undisputed claims against said separate estate. For the payment of which said dividend, amounting in all to one thousand and forty-nine dollars and eight cents, checks were duly countersigned by me and delivered to the said Bangs for said creditors; that I did not audit or pass said accounts at said meeting, but, on the contrary, duly ruled and gave notice at said meeting to the effect that I would not audit or pass said accounts until the final meeting of the creditors, at which meeting they would have received the notice required by the twenty-eighth section of the act, and made an entry to that effect, to which no one dissented or in any manner objected; that on the same day Mr. Bangs, for the said assignee, drew divers checks for the payment of said claims, to wit: checks for the payment of the said sum of five thousand one hundred and eighty-seven dollars and nine cents, to the order of the said Bangs, Sedgwick & North, for the payment of their said claims for professional services and disbursements; a check for the said sum of two hundred and thirty-eight dollars and sixteen cents, payable to the order of the said assignee, for the payment of his said claim for his commissions as assignee, and a check for the

said sum of three hundred and fifty dollars, to the order of the register, for the payment of his said claim for register's fees in this matter; that I declined to countersign said checks so payable to the order of the said Bangs, Sedgwick & North without some proof that the services charged by them had been rendered, and that they were necessary and proper, and were reasonably worth the sums charged for the same, and thereupon I drafted an affidavit to that effect for the said Bangs, Sedgwick & North to verify the said claim; that the same was presented to said Bangs and he declined to swear to it, whereupon I declined to deliver the said checks; that afterwards, and on the 31st day of October, the said Bangs for said assignee, filed with me written objections to my said claim, and on the 19th day of October, 1871, divers creditors filed with me written objections to the claim of the said Bangs, Sedgwick & North, protesting against the same. And I further certify, that in my opinion, if it be the law that the register is bound to pass all accounts of the assignee and pay all claims presented by him, at the second meet'ng of creditors, which are not at such second meeting objected to by creditors, this case, under the circumstances above set forth, should be an exception to such rule. But the order asked for would require me to audit those accounts and pass them, not at such sums and amounts as I might think just, but at such sums and amounts as the assignee has thought fit to set down. This would have the effect to strip the language of the act of all its force, and efficacy. "Audit" means "to hear, examine, adjust, pass upon, and settle the account * * * in its nature it requires the exercise of judgment." Morris v. People, 3 Denio, 391.

I cannot think that the duty of countersigning checks devolved upon me by the act is a mere mechanical duty. The law is settled otherwise. See People v. Wood, 35 Barb. 653, 657. The court say, "It is their duty (officers required to countersign checks, &c.,) to inform themselves in regard to it and countersign or refuse as they may deem proper after such investigation." But were my duties less strictly and clearly defined, there is something in this case that almost suggests the exercise of even doubtful powers. Here is an assignee who has received from the separate estate of one of the bankrupts the sum of thirteen thousand nine hundred and fifteen dollars and eighty-three cents. He shows at the meeting that he has paid therefrom to his counsel, for their services and disbursements in said separate estate, the sum of two thousand five hundred and seventy-three dollars and eleven cents; that they claim for similar services and disbursements the further sum of five thousand one hundred and eighty-seven dollars and nine cents, amounting in all to the sum of seven thousand seven hundred dollars and twenty cents. At the same meeting he declares a

dividend to creditors which amounts in all to one thousand and forty-nine dollars and eight cents, leaving the balance of what remains in his hands for his future action. Add to this the fact that the counsel making this claim was unable or unwilling to swear to the rendition and value of their services as required by me, and I cannot but think that had I yielded to the pressure and countersigned those checks I should neither have been secure upon my official bond nor innocent upon my oath of office.

NOTE [from original report]. The animus in the above opinion is so apparent as to render it utterly valueless as authority, but we print it to point a moral: to call the attention of the law makers to the necessity of a carefully prepared clause to secure the conscientious auditing of assignees' accounts, and to prevent estates in bankruptcy being eaten up by assignees, their counsel, and registers.